**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

ERNEST L. WILLIAMS,

    Plaintiff,

v.

COUNTY OF FORSYTH, et al.,

    Defendants.

CIVIL ACTION NO.
2:07-CV-0119-RWS

## **ORDER**

This case is before the Court on Defendants' Motion to Dismiss (Dkt. No. [6]), Defendants' Motion to Dismiss by Special Appearance (Dkt. No. [7]), Plaintiff's Motion for Default Judgment (Dkt. No. [19]), Plaintiff's Motion for Issuance of Default Judgment (Dkt. No. [22]), Defendants' Motion for Protective Order (Dkt. No. [23]), Plaintiff's Motion for Judicial Notice to Clarify Plaintiff's Statements (Dkt. No. [24]), and Defendants' Motion to Dismiss (Dtk. No. [26]). After considering the entire record, the Court enters the following Order.

## I. Background[1]

At the time when he filed his Complaint [1], Plaintiff, a Georgia resident, was a federal prisoner in the Federal Medical Center located in Lexington, Kentucky. He had been charged in Georgia, though apparently not indicted, with fraud. In his Complaint [1], Plaintiff alleges that on September 15, 2005, a prosecutor for Forsyth County, Georgia, presented an affidavit to a magistrate judge, requesting an arrest warrant charging Plaintiff with "Theft or Conversion of Payments for Real Property Improvement." See Dkt. No. [1]. Upon presentation of the affidavit, the magistrate judge issued a state warrant for arrest. Id. On August 16, 2006, Defendant Penny Penn, the District Attorney for Forsyth County, issued an authorization to have Plaintiff extradited from any state in the United States. Id. On August 29, 2006, a detainer letter was filed with the Forsyth County Sheriff's Office against Plaintiff. Id. On September 1, 2006, Plaintiff requested disposition of the untried state charges pursuant to the Interstate Agreement on Detainers ("IAD").[2] Id.

---

[1] The facts stated herein are derived from Plaintiff's Complaint and the record. Dkt. No. [1]. The Court makes no findings with regard to these facts.

[2] The IAD has been adopted by the State of Georgia and is codified in O.C.G.A. § 42-6-20.

2

On May 7, 2007, Plaintiff filed a motion in the United States District Court for the Eastern District of Kentucky, requesting that the court order the Bureau of Prisons to quash the detainer and remove it from his records on the basis that the State of Georgia had failed to bring Plaintiff to trial within the 180-day period required by the IAD. On September 11, 2007, that court entered an order quashing the detainer, but the court did not dismiss the Georgia warrant because of a lack of jurisdiction.

On September 21, 2007, the State of Georgia filed a request with the Bureau of Prisons ("BOP")to be notified of Plaintiff's release date so that he could be taken into custody and tried in Georgia on the outstanding charges. Plaintiff alleges that as a result of Georgia's unwillingness to dismiss the criminal charges, the BOP has refused to house him in a transitional halfway house, instead requiring him to spend additional time in prison. Plaintiff contends that he cannot be convicted on the state criminal charges because the State of Georgia failed to bring him to trial within the 180-day period set forth by the IAD and that continuing to pursue such prosecution would constitute a willful violation of Plaintiff's Sixth Amendment right to a fair and speedy trial.

3

Plaintiff seeks (1) injunctive relief ordering Defendants to dismiss the state criminal charges, (2) a declaratory judgment stating that further prosecution of the state criminal charges would amount to a Sixth Amendment violation and constitute malicious prosecution, and (3) monetary damages in excess of twelve million dollars.

## II. Discussion

### A. Defendants Forsyth County and Paxton's Motion to Dismiss [6]

Defendants Forsyth County and Sheriff Paxton have submitted a Motion to Dismiss [6]. When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true all facts set forth in the plaintiff's complaint. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted); FED R. CIV. P. 12(b)(6). Further, courts must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); FED. R. CIV. P. 12(b)(6). To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

4

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); FED. R. CIV. P. 8. See also Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (May 21, 2007) (citations omitted); Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005).

The Supreme Court has introduced the plausibility standard for motions to dismiss. See Twombly, 127 S.Ct. at 1964-68. The non-movant's factual allegations must raise the right to relief above the speculative level. Id. at 1964. The Supreme Court stressed that "[a]sking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [that is relevant]." Id. at 1965.

First, Defendants argue that Plaintiff's claims against Forsyth County should be dismissed because he is not entitled to any recovery under the Interstate Agreement Detainers Act. The Georgia Supreme Court has held that the IAD does not apply to unindicted criminal charges which remain pending, as is the case here. State v. Carlton, 276 Ga. 693, 695 (2003); 583 S.E.2d 1, 2 (Ga. 2003). Indeed, Plaintiff does not allege that he has been indicted in Georgia, and the IAD does not apply to arrest warrants for which no indictment

5

has been returned.  Id.  Therefore, there is no violation of Plaintiff's speedy trial rights under the IAD upon which he may obtain injunctive or monetary relief.

Second, Defendants argue that Plaintiff has not alleged any act or omission which would justify any liability on the part of the County.  Under the law of the Eleventh Circuit, "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983."  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  To establish municipal liability, Plaintiff must show that: (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to his constitutional rights, and (3) the policy or custom caused the violation of his constitutional rights.  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  The record shows that Plaintiff does not meet his burden in this respect.  He does not allege any facts that would lead the Court to find it plausible that a custom or policy violated his constitutional rights.  Plaintiff's claims against the County are due to be **DISMISSED**.

Additionally, Defendants argue that Sheriff Paxton is entitled to immunity from damages as an official of the State of Georgia.  Paxton argues

6

that in his official capacity, he is entitled to sovereign immunity. Indeed, the Eleventh Circuit has held that Georgia Sheriffs act as arms and instrumentalities of the State when they execute their law enforcement functions. Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). The record shows that Paxton's actions in this case fall well within the realm of official immunity. To the extent that Plaintiff brings claims against Paxton in his official capacity for the performance of his duties, he is entitled to immunity, and Plaintiffs claims will be **DISMISSED**.

Finally, Defendants argue that Sheriff Paxton cannot be held liable in his individual capacity because there is no allegation in the complaint that Plaintiff had any direct contact with Sheriff Paxton or that Sheriff Paxton authorized or directed any action which Plaintiff claims harmed him. Individual liability under 42 U.S.C. § 1983 can only be premised upon the personal conduct of the individual being sued. 42 U.S.C. § 1983; Matthews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007). There is therefore no basis for individual liability against Sheriff Paxton.

For these reasons, Defendants' Motion to Dismiss [6] is hereby **GRANTED**, and Plaintiff's claims against these defendants are **DISMISSED**.

AO 72A
(Rev.8/82)

**B. Defendants' Pre-Answer Motion to Dismiss by Special Appearance [7]**

Defendants Penny Penn, District Attorney for the Bell-Forsyth Judicial Circuit, and Harris Hodges, Administration Division Director for the Georgia Department of Corrections, by special appearance without submitting themselves to the jurisdiction of the Court or waiving proper service have filed a Pre-Answer Motion to Dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). After filing a Sur-Reply Brief [20] to the motion, Plaintiff filed a Request for Judicial Notice to Clarify Plaintiff's Statements [24] in which he seeks to clarify statements made in his Sur-Reply Brief. Plaintiff's Request [24] is **GRANTED**, **nunc pro tunc to March 14, 2008**, and the Court has considered Plaintiff's clarification as a part of the record reviewed for this Order.

These two defendants claim that in the case at bar there is no reference to an individual right that would form the basis of a § 1983 action. They assert that there is no "rights-creating language" in the IAD statute, as required by the Supreme Court as a basis for a § 1983 action or an implied right of action. See Gonzaga University v. Doe, 536 U.S. 273 (2002). Rather, the IAD creates a

procedure by which individual inmates can be transported to other states to resolve pending charges. See O.C.G.A. § 42-6-20. Unlike the Sixth Amendment, the IAD is not a constitutional right, but a federal law. See Charcman v. Nash, 473 U.S. 716, 719 (1985). There is no language in this federal law creating a right to sue or a private remedy, and the Court concludes that Defendants Penn and Hodges' Motion to Dismiss [7] shall be **GRANTED**, and these claims against them shall be **DISMISSED**.**³**

### C. Plaintiff's Motion for Entry of Default Judgment

Plaintiff has submitted a Motion for Application for Entry of Default Against Defendants Harley G. Lappin, Stephen Dewalt, R.L. Pierce, and Grace Kindred[4] pursuant to Federal Rule of Civil Procedure 55(a) [19] and a Motion for Issuance of Default Judgment Against Defendants Lappin, Dewalt, Pierce, and Kindred and Entry of Damages Sought in Original Complaint [22].

---

[3]Even assuming *arguendo* that there could be a private right of action under 42 U.S.C. § 1983, the Court concludes that Plaintiff still cannot state a claim for relief because Plaintiff fails to provide any plausible allegation that Defendants violated the IAD. Neither the Sixth Amendment nor the speedy trial provision of the IAD attaches upon the issuance of an arrest warrant. Both require an actual indictment in order to have applicable effect.

[4]These four defendants are occasionally referred to hereinafter as "the federal defendants."

9

Plaintiff claims that these Defendants failed to file any responsive pleadings by the date that they were due, according to when they were served in this matter.

Defendants counter that the entry of default judgment would be inappropriate because these defendants are not in default. As to the official capacity claims, these federal defendants have sixty days from service upon the United States Attorney within which to respond to Plaintiff's Complaint. FED. R. CIV. P. 12(a)(2). As to individual capacity claims, each federal defendant has sixty days from service upon such defendant or service upon the United States Attorney, whichever date is later, within which to respond to Plaintiff's Complaint. FED. R. CIV. P. 12(a)(3).

Upon consideration of the record, the Court concludes that the response period has net yet begun to run for individual or official capacity claims, because Plaintiff has not yet served these defendants in any capacity. FED. R. CIV. P. 4(1). The record does not show any evidence of attempts to serve the United States Attorney or the Attorney General. For these reasons, Plaintiff's Motion [19] and Request [22] are due to be **DENIED**.

### D. Federal Defendants' Motion to Dismiss [26]

Defendants have filed a Motion by Federal Defendants to Dismiss or for

10

Summary Judgment on All Claims Against Them [26]. Defendants Lappin, Kindred, Pierce, and Dewalt argue that the Court should dismiss the Complaint on the grounds that the Court lacks subject matter jurisdiction over Plaintiff's claims for injunctive relief, that the Court does not have personal jurisdiction over the individual capacity Defendants, that Plaintiff's attempted service upon the federal Defendants was insufficient, that the process that Plaintiff attempted to serve upon the federal Defendants was insufficient, that Plaintiff failed to exhaust available administrative remedies prior to filing suit, that Plaintiff's claims for "mental and emotional" damages must be dismissed pursuant to 42 U.S.C. § 1997e(e), and that sovereign immunity bars Plaintiff's damages claims against federal Defendants in their official capacities.

### 1. Individual Capacity for Federal Defendants

Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. FED. R. CIV. P. 12(h)(3); FED. R. CIV. P. 12(b)(1). Furthermore, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d

947, 951 (11th Cir. 2002) (citing Thompson v. Gaskill, 315 U.S. 442, 446 (1942)).

In order to determine whether the Court has personal jurisdiction over nonresident defendants, the Court must undertake a two-part analysis. The Court first must determine whether the long-arm statute of the state where suit is filed "provides a basis for personal jurisdiction." If so, "then [the Court must] determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). Only if both prongs are satisfied may the Court exercise personal jurisdiction over a non-resident defendant. Walack v. Worldwide Machinery Sales, Inc., 278 F.Supp.2d 1358, 1364-65 (M.D. Fla. 2003).

Georgia's long-arm statute provides that personal jurisdiction may be exercised over any nonresident who in person or through an agent (1) transacts any business in Georgia; (2) commits a tortious act or omission within Georgia; or (3) commits a tortious injury in Georgia caused by an act or omission outside the state if the non-resident solicits business in the state. O.C.G.A. § 9-10-91;

12

Carabello-Sandoval v. Honsted, 35 F.3d 521, 525-26 (11th Cir. 1995). This statute has been interpreted to give Georgia courts in a tort action the power to exercise specific personal jurisdiction over nonresident defendants to the maximum extent allowed by due process.

In this case, Plaintiff fails to fulfill his minimum initial burden to plead sufficient facts to form a basis for in personam jurisdiction over any individual capacity federal defendant. Plaintiff's claims against these defendants are based on alleged acts or omissions occurring in the course of their employment with the Bureau of Prisons by Lappin in Washington, DC, and by Dewalt, Pierce, and Kindred in Kentucky. Plaintiff cannot show that any of these defendants were in Georgia, nor does he allege that any of them committed a tortious act or omission within the State of Georgia. Furthermore, he does not allege any act or omission outside of Georgia that resulted in a tortious injury within the state of Georgia. Plaintiff also fails to allege that any of these defendants have sufficient minimum contacts with Georgia to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

13

The Court concludes that Plaintiff's averments are insufficient to establish personal jurisdiction over defendants Lappin, Dewalt, Pierce, and Kindred in their individual capacities. Under the facts presented by Plaintiff in his Complaint, assertion of jurisdiction over the federal defendants by the Court would violate their due process rights. Plaintiff's claims against the individual capacity federal defendants shall be **DISMISSED** for lack of personal jurisdiction.

2. Official Capacity for Federal Defendants

Plaintiff also seeks compensatory damages from the federal defendants "for mental and emotional damages." (Compl. [1] at 14-15.) Plaintiff admits that at the time he filed his Complaint on October 16, 2007, he was a prisoner confined at the Federal Medical Center in Lexington, Kentucky. (Compl. [1] at 1). Under the Eleventh Circuit's interpretation of the Prison Litigation Reform Act of 1995 ("PLRA"), the requirement that prisoners exhaust administrative remedies before filing suit against officials applies to lawsuits that are filed while the plaintiff is a confined prisoner but which are not decided until after he is released from confinement. See 42 U.S.C. § 1997e(a); Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (*en banc*). In this case, the record shows that Plaintiff

14

did not exhaust administrative remedies before filing this lawsuit. Indeed, Plaintiff does not even allege that he exhausted administrative remedies with regard to the complaints he filed while in the custody of the BOP. Therefore, the Court concludes that all damages claims against the federal defendants shall be **DISMISSED** for Plaintiff's failure to exhaust administrative remedies, as required under the PLRA.

Furthermore, Plaintiff asks for injunctive relief against the federal defendants. However, federal courts have the authority to decide only actual, ongoing cases or controversies under Article III of the United States Constitution. U.S. Const. art. III; Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). "The doctrine of mootness is derived from this limitation because an action that is moot cannot be characterized as an active case or controversy." Adler v. Duval County School Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). The central question of all mootness problems is whether changes in the circumstances that existed at the beginning of litigation have forestalled any occasion for meaningful relief. Pub. Serv. Co. v. Consol. Utils. & Commc'ns, Inc., 846 F.2d 803, 810 (1st Cir. 1998). A claim must be dismissed as moot

15

when effective relief cannot be granted because of later events. Westmoreland v. Nat'l Transp. Safety Bd., 833 F.2d 1461, 1462 (11th Cir. 1987).

In this case, Plaintiff advances a claim against the federal defendants seeking equitable relief including "an injunction ordering the BOP Defendants to take all steps to complete a timely RRC placement." (Compl. [1] at 14.) The Court concludes that due to events occurring after Plaintiff filed his Complaint, his injunctive relief request is moot. The federal defendants have demonstrated that they complied with several of Plaintiff's requests at the time that he filed his Complaint. The record shows that they directed the BOP to exercise its discretion to determine whether to authorize Plaintiff's transfer during the latter part of Plaintiff's term of imprisonment, and such consideration renders moot his claim for injunctive relief.

Furthermore, even if this review would not moot his claim, Plaintiff was released from custody to begin the supervised release portion of his sentence on April 1, 2008. Due to Plaintiff's release, the provisions of 18 U.S.C. § 3624(c), permitting placement of prisoners in community confinement at the end of their sentence, is no longer applicable to Plaintiff's case. Accordingly, the Court concludes that his claim for injunctive relief against federal defendants is moot

16

and must be **DISMISSED**. In light of the dismissal of all of Plaintiff's claims against the federal defendants, the federal defendants' Motion for Summary Judgment is **DENIED, as moot**.

### E. Defendants Penn and Hodges' Motion for a Protective Order [23]

The foregoing matters having been resolved, the Court concludes that Defendants Penn and Hodges' Motion for a Protective Order in Response to Plaintiff's Threats and Harassment [23] shall be **DENIED, as moot.**

## III. Conclusion

Defendants Forsyth County and Sheriff Ted Paxton's Motion to Dismiss (Dkt. No. [6]) is hereby **GRANTED**; Defendants' Motion to Dismiss by Special Appearance (Dkt. No. [7]) is hereby **GRANTED**; Plaintiff's Motion for Default Judgment (Dkt. No. [19]) and Plaintiff's Motion for Issuance of Default Judgment (Dkt. No. [22]) are hereby **DENIED**; Defendants' Motion for Protective Order (Dkt. No. [23]) is hereby **DENIED,** *as moot*; Plaintiff's Motion for Judicial Notice to Clarify Plaintiff's Statements (Dkt. No. [24]) is hereby **GRANTED,** *nunc pro tunc* **to March 14, 2008**; and Federal Defendants' Motion to Dismiss (Dkt. No. [26-1]) is hereby **GRANTED** and Motion for Summary Judgment (Dkt. No. [26-2]) is hereby **DENIED, as moot**.

17

Because all of Plaintiff's claims are hereby dismissed, the Clerk is **DIRECTED** to enter judgment in favor of all Defendants and close this case.

**SO ORDERED**, this  26th  day of September, 2008.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)